*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* L. PHAM, Minor.

UNPUBLISHED
August 10, 2023

No. 365144
Ingham Circuit Court
Family Division
LC No. 22-000582-NA

Before: YATES, P.J., and BORRELLO and PATEL, JJ.

PER CURIAM.

Petitioner, Cindy Pham, and respondent, Charles Moore, have a five-year-old son, LP. This case, initiated by petitioner, began just as respondent's 34-month pretrial detention was ending. In July 2022, petitioner filed a petition to terminate respondent's parental rights to LP. In August 2022, the trial court authorized the petition. But on February 27, 2023, the trial court dismissed the petition after an adjudication trial, finding no evidence that respondent had neglected or refused to provide support for LP. Petitioner appeals of right the dismissal at the adjudication phase of the petition to terminate respondent's parental rights to LP. We affirm.

## I. FACTUAL BACKGROUND

For nearly three years of LP's life, respondent was detained on pending criminal charges. But on June 30, 2022, respondent was acquitted on all charges, and petitioner soon thereafter filed a petition to terminate respondent's parental rights to LP. After conducting a preliminary hearing on August 24, 2022, a referee authorized the filing of an amended petition, which was submitted on September 12, 2022. The amended petition stated that respondent "was recently incarcerated for 34 months and is now currently out on bond for felony charges that include assault and drugs." The amended petition also laid out numerous ways in which respondent had failed to care for LP. But as the trial court observed at a hearing on October 6, 2022, this case seemed unusual because the Michigan Department of Health and Human Services was not involved in the proceedings.

After several unproductive pretrial conferences in 2022 and the withdrawal of petitioner's attorney, petitioner represented herself at the final pretrial conference on February 13, 2023, and at the adjudication trial on February 27, 2023. At the pretrial conference, the trial court signed an order for the release of records from Children's Protective Services (CPS), so both parties arrived for the adjudication trial with all the evidence they needed.

At the adjudication trial on February 27, 2023, petitioner and respondent testified. No other witnesses were called. Respondent testified that, before his incarceration, he had lived around the corner from petitioner and LP, saw LP every day, and cared for him sometimes when petitioner was at work or at school. Respondent stated that he had not paid child support, but had provided petitioner with money to pay the bills. Petitioner testified that respondent "was around" before he was detained, but he did not maintain contact with LP while he was detained for 34 months. Also, the record established that respondent was in arrears on child support. Petitioner testified that she had sole legal and physical custody of LP and that respondent's parenting time was reserved. In addition, petitioner moved for admission of several documents that the trial court declined to admit into evidence. Ultimately, the trial court concluded that there was no evidence that respondent had neglected or refused to support LP when he had been able to do so. Instead, he had simply been detained. The trial court further determined that LP's home environment was not unfit because respondent was not part of that environment. Thus, the trial court dismissed the petition, finding that no statutory ground for jurisdiction had been established by a preponderance of the evidence. Finally, the trial court referred the case to the Friend of the Court for review. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, petitioner faults the trial court for adjourning the adjudication trial beyond the six-month statutory limit for such hearings. In addition, petitioner asserts that the trial court abused its discretion by excluding her proffered evidence for lack of relevancy and authenticity. Finally, petitioner asserts that the trial court erred in applying and interpreting MCL 712A.2(b). We shall address each of these arguments in turn.

## A. TIMELY ADJUDICATION

Petitioner claims that the trial court deprived her of due process by failing to hold a timely adjudication trial. Ordinarily, this Court considers de novo whether the trial court complied with due-process requirements in a child-protective proceeding. *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021). But petitioner has not preserved this issue because she did not raise it before the trial court. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Consequently, we can review this issue only for plain error affecting petitioner's substantial rights. *Sanborn*, 337 Mich App at 268.

Parents have a significant liberty interest in the care and custody of their children. *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003). The timeliness of hearings affects a parent's right to due process, which requires that a parent be afforded an opportunity to be heard at a meaningful time and in a meaningful manner. *Sanborn*, 337 Mich App at 268. Michigan statutes, court rules, and departmental policies generally ensure that parents are provided with procedural due process. *Id*. For example, according to MCR 3.972(A), if a child has not been removed from the parent's home, an adjudication trial must take place "within 6 months after the authorization of the petition unless adjourned for good cause under MCR 3.923(G)." Here, the petition was authorized, albeit upon submission in an amended form, after a preliminary hearing on August 24, 2022. The order authorizing the petition was signed and entered on September 9, 2022, and the amended petition was thereafter filed on September 12, 2022. Therefore, the adjudication trial on February 27, 2023, seemingly took place within 6 months after authorization and filing of the amended petition.

But even if the adjudication trial took place a few days beyond the six-month deadline, that delay was almost entirely due to adjournments for good cause prompted by (and for the benefit of) petitioner. According to MCR 3.923(G), "[a]djournments of trials or hearings in child protective proceedings should be granted only (1) for good cause, (2) after taking into consideration the best interests of the child, and (3) for as short a period of time as necessary." "Good cause" means a legally sufficient or substantial reason for the court to grant an adjournment. *Utrera*, 281 Mich App at 11. If a party contributes to any delay, then that delay is not a basis for reversal. *Id*. at 12.

Here, time and time again, the trial court attempted to schedule a prompt adjudication trial, but petitioner's actions foiled the trial court's efforts. At the pretrial conference on September 22, 2022, there was trouble with the Zoom link, so nothing could be accomplished. At the hearing on October 6, 2022, petitioner's attorney withdrew because of an irreconcilable conflict, so the court afforded petitioner time to find a replacement attorney. At the pretrial conference on October 24, 2022, petitioner still did not have an attorney because she mistakenly believed that the court would appoint an attorney for her, so nothing could be accomplished. At the pretrial conference that took place December 1, 2022, nothing was accomplished because petitioner failed to notify respondent and his attorney of the court date. Unsurprisingly, the adjudication trial could not take place until 2023, but that lengthy delay was the result of petitioner's difficulties and procedural missteps.

To be sure, MCR 3.923(G)(2) states that trial courts should grant adjournments only "after taking into consideration the best interests of the child," which the trial court here did not expressly address. But in every instance when the trial court adjourned the adjudication trial, LP was in the sole physical custody of petitioner, so petitioner would have no basis to object to the adjournment as against LP's best interests. Indeed, respondent was the party who had a basis to object, yet he chose not to complain. Under the circumstances, we conclude that the adjournments that led to a lengthy delay in the adjudication trial did not rise to the level of plain error here.

## B. EVIDENTIARY RULINGS

Petitioner takes issue with many of the trial court's evidentiary rulings. This Court reviews a trial court's decisions to admit or exclude evidence for an abuse of discretion. *Utrera*, 281 Mich App at 15. The trial court abuses its discretion only when its decision falls outside the range of principled outcomes. *Id*.

Petitioner argues that the trial court erred when it considered events that occurred after the petition was filed. Specifically, the trial court considered that respondent attempted to contact LP after respondent was released from detention. The trial court did not commit an abuse of discretion by considering that information. A trial court may assume jurisdiction over a juvenile

> [w]hose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. [MCL 712A.2(b)(1).]

"Th[is] statute speaks in the present tense, and, therefore, the trial court must examine the child's situation at the time the petition was filed." *In re MU*, 264 Mich App 270, 279; 690 NW2d 495 (2004). The trial court need not exclude evidence of events that occur after the petition is filed. *In re Dearmon*, 303 Mich App 684, 696; 847 NW2d 514 (2014). The only evidence that needs to be excluded is evidence of abuse or neglect outside the allegations in the petition. *Id.* at 698. The trial court was allowed to consider post-petition evidence that respondent tried to contact LP after respondent was released from detention.

Petitioner next contends that the trial court should have admitted respondent's judgment of sentence for felony failure to pay child support. The trial court's ruling not to admit the judgment of sentence fell within the range of reasonable outcomes because petitioner did not establish that the judgment was related to the parties' child, LP. The party seeking to admit evidence has the burden to establish that it is relevant and admissible. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). This Court generally defers to the trial court's credibility assessments. *In re White*, 303 Mich App 701, 711; 846 NW2d 61 (2014). Here, petitioner attempted to introduce a judgment of sentence for felony nonpayment of support, which petitioner claimed related to LP. But respondent had several children and the judgment did not identify the child who was deprived of child support. Beyond that, a comparison of the arrearage amount in respondent's judgment of sentence with the arrearage amount in the support order admitted at the adjudication trial reveals that the amounts are vastly different. Thus, we conclude that the trial court's decision to exclude the judgment of sentence fell within the range of principled outcomes.

Petitioner next argues that the trial court should not have excluded respondent's conviction for domestic violence. We believe that the trial court did not abuse its discretion by excluding that evidence as irrelevant. Relevant evidence refers to evidence that has any tendency to make a fact of consequence more or less likely to be true. MRE 401. "In child protective proceedings, the focus is the protection of the child . . . ." *MU*, 264 Mich App at 281. Allegations that are remote are less likely to be logically relevant to a fact in controversy. See *People v Yost*, 278 Mich App 341, 405; 749 NW2d 753 (2008). The conviction that petitioner sought to admit was a plea-based conviction for domestic violence that occurred before LP was born and several years before the petition was filed in this case. The trial court's ruling excluding that evidence, which was remote in time, did not constitute an abuse of discretion.

Petitioner next contends that the trial court abused its discretion by excluding a printout of respondent's criminal history. As a general proposition, to prove the content of a writing or record, the party seeking to introduce the writing or recording must provide the original. MRE 1002. But a copy of an official record may be admitted under MRE 1005 as follows:

> The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, *may be proved by copy, certified as correct in accordance with Rule 902 or testified to be correct by a witness who has compared it with the original*. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given. [Emphasis added.]

Petitioner did not meet any of those requirements. Furthermore, the printout itself indicates on its face that it may not be accurate, so the trial court's ruling to exclude that document fell within the range of reasonable outcomes.

Petitioner next faults the trial court for excluding CPS reports regarding respondent's other children. Petitioner asked the trial court to take judicial notice of the reports. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." MRE 201(b). The trial court, in a proceeding for the termination of parental rights, may take judicial notice of court documents concerning a prior petition. *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009). But the CPS reports presented by petitioner were *not* related to any previous petition and were not capable of an accurate determination. They were agency reports, not court documents, and the trial court properly declined to take judicial notice of them. To the extent petitioner contends that the reports were relevant, that argument does not address the basis of the trial court's decision, so we decline to address it. See *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004).

Finally, petitioner insists that the trial court erred by ruling that petitioner was obligated to furnish an expert witness to authenticate recordings of messages that respondent left on her phone. Petitioner is correct that the trial court erred by refusing to admit this evidence, but that error did not prejudice her. Under MRE 901, a proponent of evidence must provide "evidence sufficient to support a finding that the matter in question is what the proponent claims." A recording "ordinarily may be authenticated by having a knowledgeable witness identify the voices on the tape." *People v Berkey*, 437 Mich 40, 50; 467 NW2d 6 (1991). Here, petitioner offered to play the messages on her phone and to show the dates the recordings were left on her phone. She would have been able to identify the voice on the recording. Thus, the trial court should not have excluded this evidence on the basis that an expert was needed to authenticate the voice messages. But petitioner has not established that the exclusion of that evidence prejudiced her. This Court will not predicate error on a ruling that excludes evidence unless that ruling affected the substantial rights of a party. MRE 103(a). Other than a remark that respondent loved LP, the recordings do not relate to LP. To the extent that the messages contained vulgarity directed at petitioner, there is no indication that LP heard the statements on the recordings or was affected by them. The question before the trial court was focused on the child, not on the parties. Because the evidence did not indicate anything about LP's support or environment, petitioner has not established that this evidentiary error affected her substantial rights.

## C. STATUTORY GROUNDS

Petitioner contends the trial court erred by failing to take jurisdiction over LP. This Court reviews for clear error a finding regarding jurisdiction over children. *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020). This Court reviews this issue in light of the trial court's findings of fact. *Id.* We must accept a trial court's findings of fact unless they are clearly erroneous, which occurs only when this Court is definitely and firmly convinced that a mistake has been made. *Id.* Also, we must defer to the trial court's credibility assessments. *White*, 303 Mich App at 711.

Petitioner faults the trial court for committing clear error in rejecting petitioner's argument that respondent failed to provide necessary support to LP. But we can find no clear error because petitioner did not prove that respondent neglected to support LP when he was financially able to do so. The trial court has jurisdiction over a child if the petitioner has proven at adjudication that a preponderance of legally admissible evidence establishes the existence of a statutory ground for jurisdiction. *MU*, 264 Mich App at 278. The trial court may exercise jurisdiction over any child "[w]hose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship." MCL 712A.2(b)(1).

According to MCL 712A.2(b)(1)(B), for purposes of assuming jurisdiction of a child, the term "neglect" means neglect as defined by MCL 722.602, which states:

> "[n]eglect" means *harm to a child's health or welfare* by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, *though financially able to do so*, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [Emphasis added.]

Here, the trial court found that respondent had not neglected or refused to support the child; rather, respondent had been detained for much of LP's life. Petitioner demonstrated that respondent was in arrears on child support. Respondent agreed that he had not paid child support before or while he was detained, but he testified that, before his detention, he had given petitioner money to help pay the bills. Petitioner offered no evidence that respondent had a means to support the child while he was detained. Thus, petitioner did not establish that respondent failed to support the child when he had the financial ability to do so.

Petitioner next argues that the trial court erred by finding that the child's home environment was not unfit. The trial court found that, because LP had no home environment with respondent, LP's home with respondent could not be unfit. A trial court may exercise jurisdiction over a child whose "home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in." MCL 712A.2(b)(2). In child-protective proceedings, the focus is on protection of the child, not punishment of the parent. *MU*, 264 Mich App at 281. The evidence established that petitioner had sole legal and physical custody and respondent's parenting time was reserved. LP's home environment did not include respondent in any way. Thus, we conclude that the trial court did not err by focusing on the fitness of the child's home environment.

Petitioner next faults the trial court for refusing to take jurisdiction because respondent's neglect presented a risk of harm to the child's well-being. One circumstance under which the trial court may assume jurisdiction is when a child "is subject to a substantial risk of harm to his or her mental well-being[.]" MCL 712A.2(b)(1). To sustain this allegation, a petitioner must provide evidence that a parent's behavior had a negative effect on the child. *Kellogg*, 331 Mich App at 256. Petitioner offered no evidence that respondent's faults, whatever they were, had any effect on LP.

Consequently, the trial court did not err when it determined that petitioner had not established this statutory ground for jurisdiction of LP.

Affirmed.

/s/ Christopher P. Yates
/s/ Stephen L. Borrello
/s/ Sima G. Patel