Taylor, C.J.
In this land condemnation case where the city of Novi is attempting to take private property to construct a road, the first issue is whether the requirement of a public use, under Const 1963, art 10, § 2, is met when the proposed road will be available for use by the public but will be primarily used by a private entity that has contributed funds to the project. We conclude that such a road does qualify as a public use. The second issue is whether, under MCL 213.56, a court can find the city has abused its discretion in determining there is a public necessity for the condemnation when the city *245 has not considered alternatives to the taking. We conclude that a failure of the city to consider alternatives was not an abuse of its discretion. Because the Court of Appeals incorrectly decided that the proposed road was not a public use, we reverse that decision. We also find no fraud, error of law, or abuse of discretion in the city’s determination that there exists a public necessity to take defendants’ property for the proposed project. Accordingly, we remand this matter to the trial court for entry of summary disposition in favor of plaintiff.
I
Por many years traffic congestion at the intersection of Grand River Avenue and Novi Road in the city of Novi was a concern to the city because it represented a growing traffic hazard. As early as 1984 a study recommended a “ring road” around the intersection to relieve traffic congestion and provide access to vacant land not fronting on Grand River Avenue or Novi Road. The study also recommended a road, referred to here as the “spur road,” from the northwest side of the ring road, that would access industrial establishments that were then accessed from Grand River Avenue. The study recommended the spur road because the employee traffic from the industries with access on Grand River Avenue was resulting in frequent accidents. The study noted that, but for “the need to resolve [this] critical traffic problem,” the northwest quadrant of the ring road project “may have been abandoned altogether.”
Wisne Corporation was one of the industrial entities that would be served by the spur road.[1] The new spur road was to traverse property owned by defendants, *246 even though Wisne Corporation owned property that could possibly be used for a new access road. Wisne at one point agreed to pay $200,000 toward the funding of the spur road, and the road was to be named A.E. Wisne Drive.
In August 1998, the Novi City Council passed resolutions declaring the necessity for taking defendants’ property for the purpose of creating A.E. Wisne Drive. Plaintiff filed a condemnation complaint in September 1998 pursuant to the Uniform Condemnation Procedures Act, MCL 213.51 et seq.
Defendants filed a motion challenging the public purpose and necessity of the taking, pursuant to MCL 213.56. Defendants claimed that the taking was for the private purpose of benefiting Wisne, pointing out Wisne’s financial support for the road and documents referring to the benefit Wisne would receive from the road. Defendants did not deny that the public would use the street. Rather, the thrust of defendants’ argument was that the road was planned to primarily serve private entities and that the city wanted to include it in the plans because the funding Wisne agreed to provide would entitle the city to obtain state funding for the rest of the ring road project. Defendants also alleged that the taking was not necessary, and that the city exceeded its authority because the enabling legislation that gave it authority to condemn did not permit it to take property from one private owner and transfer it to another private owner.
In 1999, the trial court held a three-day evidentiary hearing and bench trial, during which a dozen witnesses testified. The parties stipulated that the existing access drive used by Wisne was hazardous and that it was going to be eliminated as a result of part of a bridge *247 improvement project undertaken by the Oakland County Road Commission on Grand River Avenue.[2]
The circuit court concluded that the proposed taking was unconstitutional. The court applied the heightened scrutiny test set forth in Poletown Neighborhood Council v Detroit, 410 Mich 616; 304 NW2d 455 (1981),[3] concluding that although the project “further[ed] a benefit to the general public,” it benefited a specific, identifiable, private interest, and this private benefit predominated over the benefit to the general public. Although the trial court did not expressly say so, presumably it found that under Poletown such a predominant private benefit removed the project from the realm of constitutional, public uses. Without further explanation, the court then held that “Plaintiff City’s actions evidence a lack of public necessity by fraud, error of law and/or abuse of discretion,” and thus the proposed taking was unconstitutional.
In analyzing plaintiffs appeal, the Court of Appeals also relied on Poletown, recognizing that it was bound to do so. 253 Mich App 330, 343; 659 NW2d 615 (2002). It noted that both the majority opinion and Justice RYAN’s dissent in Poletown regarded the concept of public necessity as being separate and distinct from that of public use or public purpose. Although it found that the trial court had erred by conflating the two concepts, the Court found this error harmless because it agreed with the trial court that the private interest predominated over the public interest, making the proposed taking *248 unconstitutional. The Court found the public benefit to be “speculative and marginal” and the private interest “specific and identifiable,” primarily to the benefit of Wisne. It affirmed the judgment of the trial court, concluding that, under the Poletown heightened scrutiny test, plaintiff failed to show the project was a public use.
We granted the city of Novi’s application for leave to appeal after issuing our decision in Wayne Co v Hathcock, 471 Mich 445; 684 NW2d 765 (2004). 471 Mich 889 (2004).
H
Under the Michigan Constitution, private property shall not be taken for public use without just compensation. Const 1963, art 10, § 2. This provision precludes condemnation of private property for private use, even though some “public interest” may be said to be served by such private use. Hathcock, supra at 472; Portage Twp Bd of Health v Van Hoesen, 87 Mich 533; 49 NW 894 (1891). We review de novo the question whether a proposed taking is constitutional. Hathcock, supra at 455.
The statutes under which plaintiff was proceeding are the Home Rule City Act, MCL 117.1 et seq., and the Uniform Condemnation Procedures Act, MCL 213.51 et seq. The former authorizes plaintiff to condemn private land for boulevards and streets, among other uses, MCL 117.4e, and the latter provides the procedures plaintiff must follow for condemnation. Defendants’ challenge to the proposed taking was made pursuant to MCL 213.56, which allows the owner of the property to be taken “to challenge the necessity of acquisition of all or part of the property for the purposes stated in the complaint” by filing a motion asking that the necessity be reviewed. *249 MCL 213.56(1). The statute also provides that when the proposed taking is by a public agency, “the determination of public necessity by that agency is binding on the court in the absence of a showing of fraud, error of law, or abuse of discretion.” MCL 213.56(2). We review the trial court’s factual findings for clear error, but its legal conclusions are reviewed de novo. Federated Publications, Inc v City of Lansing, 467 Mich 98, 106; 649 NW2d 383 (2002).[4]
ill
There does not appear to be any dispute that plaintiff, in its charter, has claimed for itself the condemnation powers granted it by the Legislature under the Home Rule City Act. The act authorizes plaintiff to take private property for the purpose of a public road. MCL 117.4e. Defendants also do not question that the ring road part of the project is a public road. The heart of this case is whether the spur road part of the project constitutes a private use requiring rejection of part or all of the road project. Plaintiff asserts that the planned spur road is a public use and that defendants have not successfully challenged the necessity of the project. We agree.
This Court recently clarified Michigan’s law concerning public use in Hathcock, supra. However, we declined to provide a “single, comprehensive definition of ‘public use ....’” Hathcock, supra at 471. We overruled Pole-town’s heightened scrutiny test because it violates our Constitution, and instead set forth the three-factor test *250 proposed by Justice RYAN in his dissenting opinion in Poletown. Under Hathcock, when land condemned by a public agency is transferred to a private entity, we do not weigh the relative benefits but instead analyze the facts to see if any of three conditions are met.[5] However, such a transfer of property is not proposed here; the city will retain ownership of the land. Thus, although Hath-cock informs us that we are not to use Poletown’s heightened scrutiny test, it does not provide us with the elements to apply when the public agency retains ownership and control.
Plaintiff urges us to hold that any road project is unquestionably a public use. In Poletown, supra at 672, Justice RYAN quoted Rindge Co v Los Angeles Co, 262 US 700, 706; 43 S Ct 689; 67 L Ed 1186 (1923), where the United States Supreme Court said, “ ‘That a taking of property for a highway is a taking for public; use has been universally recognized, from time immemorial.’ ” However, we agree with defendants that the single fact that a project is a road does not per se make it a public road.
In Rogren v Corwin, 181 Mich 53, 57-58; 147 NW 517 (1914), we explained that the difference between public and private use in the context of roads
“depends largely upon whether the property condemned is under the direct control and use of the government or public- officers of the government, or, what is almost the same thing, in the direct use and occupation of the public at *251 large, though under the control of private persons or of a corporation ...[Quoting Varner v Martin, 21 W Va 534, 552 (1883).]
The Rogren Court continued quoting Varner for its definition of when a road is a public road and when it is a private road:
“All agree that, if the road has been established by public authority, and the damages for the condemnation of the land has been paid by the general public, and the road is under the control and management of public officers, whose duty it is to keep it in repair, then it is a public highway, and the legislature may constitutionally authorize the condemnation of land for the route of such a road, though it may have been opened under such act by a county court on the application of a single person to whose house the road led from some public road, and though it may not have been expected when the road was established that it would be used to any considerable extent by any person, except the party for whose accommodation it was opened.” [Rogren, supra at 58, quoting Varner, supra at 554.]
Thus, according to Rogren, where the public body establishes a road, pays for it out of public funds, and retains control, management, and responsibility for its repair, the Michigan Constitution allows private land to he condemned for the project, no matter what the proportional use of the road will be by the public or by private entities.
Under the Rogren analysis, the spur road proposed by plaintiff is a public use. Plaintiff initiated the project in response to the growing traffic problems in the area. Ownership, control, and maintenance will remain with that public body. The public will be free to use and occupy the spur, and although Wisne may be the primary user of the spur, “[i]t is the right of travel by all the world, and not the exercise of the right, which constitutes a way a public highway.” Road Dist No 4 v *252 Frailey, 313 Ill 568, 573; 145 NE 195 (1924). Wisne is to be granted no interest in the property and will have no ability to control use of or access to the road. We therefore find the proposed project a public road, and thus a public use.
We do not find the fact that Wisne was expected to contribute to the funding of the road dispositive of the question of public use. “The fact that a private individual pays for the right of way does not change the character of the road.” Id. at 574. See also 2A Nichols, Eminent Domain (3d ed), § 7.03[5][e], p 7-51. The county’s role in the hazardousness of the original driveway, and in its removal, is also not relevant. In sum, when the public body that establishes a road retains ownership and control of it, and the public is free to use and occupy it, that proposed use is a public use.
Therefore, in accord with the characteristics of public use identified in Rogren, the project proposed by plaintiff is a public use. The lower courts erred in applying the Poletown test to this case because no property interest is being transferred to a private entity and because, even if there were such a transfer, Hathcock’s three-factor test would apply, rather than Poletown’s heightened scrutiny test.[6]
IV
Defendants also have challenged the proposed taking on the basis of public necessity. It is required pursuant to MCL 213.56 that there be a public necessity for the taking to be permitted. Specifically, there must be a *253 necessity for the taking “of all or part of the property for the purposes stated in the complaint...MCL 213.56(1); State Hwy Comm v Vanderkloot, 392 Mich 159, 175; 220 NW2d 416 (1974). Yet, pursuant to the statute, the determination of necessity is left not to the courts but to the public agency, which in this case is the city. The only justiciable challenge following the agency’s determination is one based on “fraud, error of law, or abuse of discretion.” MCL 213.56(2). None of these bases is shown to exist here.[7]
Fraud does not provide defendants a basis for relief in this case because the requisite elements are not supported by the record.[8] Moreover, under the Home Rule City Act, plaintiff has the legal authority to condemn this land for a public road, so it has not made an error of law.[9] We are left to review whether plaintiff *254 abused its discretion in determining that plaintiffs property was necessary to complete this project.
An abuse of discretion occurs when an unprejudiced person considering the facts upon which the decision was made would say that there was no justification or excuse for the decision. Gilbert v DaimlerChrysler Corp, 470 Mich 749, 761-762; 685 NW2d 391 (2004). Discretion is abused when the decision results in “an outcome falling outside this principled range of outcomes.” People v Babcock, 469 Mich 247, 269; 666 NW2d 231 (2003). Here, defendants’ objections to the necessity of taking their property for the proposed road are based on the assertion that the city never considered any alternatives and that reasonable alternative locations were available. Even if that were so, such facts would not remove the proposed road from the “principled range of outcomes.”[10] The city’s decision-making process is not what we review; rather, we look at the resulting outcome. The city is not obligated to show that its plan is the best or only alternative, only that it is a reasonable one.[11] The dissent’s insistence that plaintiff has the burden of proving necessity is clearly contrary to the deference the Legislature requires of us. The statute *255 not only limits the grounds for reversal and by its language places that burden on defendants, but also allows only thirty days between when defendants file a necessity motion and when the hearing is held, implicitly limiting discovery on the issue. MCL 213.56. The Legislature adds a final hurdle for defendants by permitting appellate review of the trial court’s decision only by leave granted. MCL 213.56(6). Because defendants have not shown that the proposed route of the public road is outside the zone of reasonable alternatives, we find plaintiff did not abuse its discretion in determining that the taking of defendants’ property is necessary for the ring road project.
v
In his dissent, Justice CAVANAGH süa sponte raises the question of mootness,[12] concluding that the city does not intend to pursue this project. To make this argument, he relies exclusively on the colloquy at oral argument. While we do not think that that argument supports his conclusion, which we will discuss below, a *256 brief review of the basic principles of mootness law also shows that it is premature to declare this matter moot.
When a complaint is filed and an actual injury is alleged, a rebuttable presumption is created that there is a genuine case or controversy. See Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608, 631; 684 NW2d 800 (2004). The case may be dismissed as moot if the moving party satisfies the “heavy burden” required to demonstrate mootness. MGM Grand Detroit, LLC v Community Coalition for Empowerment, Inc, 465 Mich 303, 306; 633 NW2d 357 (2001), citing Los Angeles v Davis, 440 US 625, 631; 99 S Ct 1379; 59 L Ed 2d 642 (1979). If such a motion is brought, “the plaintiff must further support the allegations of injury with documentation” and must sufficiently support its claim if it goes to trial. Nat’l Wildlife, supra at 631.
These procedural requirements are entirely lacking in this case at this time. No motion or other pleading has claimed mootness and there has been no “support” so as to meet any burden, much less the “heavy burden” required to demonstrate mootness.
Notwithstanding this, the dissent evidently feels that the record here is sufficient so that we sua sponte can proceed. We think the record cannot support that conclusion. The dissent, relying entirely on the oral argument here, infers that several statements by plaintiffs counsel support a finding of mootness. The essence of the first statement made in response to Justice CORRIGAN’s query about whether the ring road part of the project could be split off was that it could not because plaintiff did not want the project built piecemeal. This does not indicate abandonment; rather, it refers to a desire to consolidate all parts of the project before getting underway. Certainly in the absence of *257 contradictory evidence, of which none has been presented, the draconian reading given by the dissent is unwarranted.
The second claim is that the plaintiff, in rebuttal argument, failed to “contest or deny that there are currently no plans to pursue the project.” Post at 262. Yet, plaintiff had no reason to respond in such a way because the defense counsel did not say the city had no intention of completing the spur road for which defendants’ property was being condemned; he merely said the ring road project, with its rescinded state funding, was “gone.” This appears to be nothing more than a reference to the lapse of funding, which happens invariably when there is extended litigation. With this understanding, a rebuttal would not, for a person conversant with this process, call for a full vindication of continued interest in the whole project. Thus, that one did not come is unexceptional and in no event establishes mootness.
Finally, the dissent faults plaintiff for its response to the defense counsel’s observation that the reason plaintiff continued the litigation was because it wants a rule of law reversing the decision of the Court of Appeals. How surprising is it that an appellant would concede that it wanted the Court of Appeals decision reversed? Not very, we believe. Surely it says nothing about mootness.
We conclude therefore that plaintiffs complaint is a matter of current controversy because there is no evidence here presented, indeed only defendants’ speculation, that plaintiff would not proceed with the condemnation upon prevailing in this Court. On remand, should the defendants conclude that mootness actually is an issue, they can raise it in the normal course and let the trial court determine if they have met their burden. *258 Such has not been shown on the record before us, and thus we conclude that this matter is not moot and is appropriate for adjudication.
VI
We hold that the proposed road and spur are for a public use, and therefore the proposed condemnation does not violate Const 1963, art 10, § 2. We also hold that plaintiffs determination that defendants’ property is necessary to complete the ring road project does not violate the UCPA because it does not indicate fraud, error of law, or an abuse of discretion. Accordingly, the decisions of the Court of Appeals and the circuit court are reversed, and this matter is remanded to the circuit court for further proceedings not inconsistent with this opinion.
Corrigan, Young, and Markman, JJ., concurred with Taylor, C.J.

 Wisne Corporation changed ownership and its name several times over the years.

 Despite eliminating Wisne’s access drive, the Oakland County Road Commission did not develop a new access road off Grand River Avenue, relying instead on the access that was to be provided by the planned A.E. Wisne Drive.

 On July 30, 2004, Poletown was overruled by this Court in Wayne Co v Hathcock, 471 Mich 445; 684 NW2d 765 (2004).

 Cases stating that the trial court’s determinations in condemnation cases are reviewed for clear error are correct only to the extent that this standard applies to factual findings. See, e.g., City of Troy v Barnard, 183 Mich App 565, 569; 455 NW2d 378 (1990); Nelson Drainage Dist v Filippis, 174 Mich App 400, 403; 436 NW2d 682 (1989).

 Under Hathcock, the transfer of condemned property, to a private entity may be appropriate where: (1) “ ‘public necessity of the extreme sort’ ” requires collective action; (2) the property remains subject to public oversight after the transfer to the private entity; or (3) the property is selected because of “ ‘facts of independent public significance,’ ” rather than the interests of the private entity receiving the property. Hathcock, supra at 476, quoting Poletown, supra at 674-681 (Ryan, J., dissenting).

 We note that the Court of Appeals attempted to apply such a test by looking to Justice Ryan’s Poletown dissent. However, the test applies when there is a transfer of property to a private entity, which did not occur here.

 We agree with the dissent that we first must review the trial court’s decision on this issue for clear error. Post at 271. However, the trial court’s conclusion that the project was not necessary was clearly based on an erroneous legal theory (i.e., that there was no public use and thus no necessity). Moreover, both parties assured the Court at oral argument that the record was sufficient for us to make a determination on the necessity issue without a remand.

 The elements of fraud are: (1) that the charged party made a material representation; (2) that it was false; (3) that when he or she made it he or she knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he or she made it with the intention that it should be acted upon by the other party; (5) that the other party acted in reliance upon it; and (6) that the other party thereby suffered injury. Scott v Harper Recreation, Inc, 444 Mich 441, 446 n 3; 506 NW2d 857 (1993). Defendants at most have asserted that plaintiff made “untrue” statements and behaved in an “unseemly” manner. Nowhere does the record show any reliance or injury resulting from these acts.

 Defendants claim that plaintiffs condemnation complaint is not supported by appropriate enabling legislation. This claim is based on the assertion that plaintiff is not authorized to take private land for a private use. Because we conclude that the road is a public use, defendants’ argument is without merit.

 Although defendants contend that plaintiff could have built an alternative to the proposed Wisne drive on land actually owned by Wisne, the record indicates that such an alternative would still have exited onto Grand River Avenue. We note in passing that such an “alternative” would likely have defeated the purpose of relocating the access road, because it would have done nothing to eliminate the “critical traffic problem” posed by the exit onto Grand River Ave.

 In Vanderkloot, supra at 172-173, we identified numerous factors that might play a role in determining the routing of a road, including “comparative costs of construction, directness, comparative costs of maintenance, safety, probable amount of travel, convenience, topography, aesthetics, etc.” That is why these legislative determinations are entitled to a highly deferential standard of judicial review, and will not be disturbed except where there is evidence of fraud, error of law, or an abuse of discretion.

 Where the facts of a case make clear that a litigated issue has become moot, a court is, of course, bound to take note of such fact and dismiss the suit, even if the parties do not present the issue of mootness. “ ‘ “Courts are hound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding.” ’ ” Daniels v Peterson, 462 Mich 915, 917-918; 615 NW2d 14 (2000) (Kelly, J., dissenting) (quoting Fox v Univ of Mich Bd of Regents, 375 Mich 238, 242; 134 NW2d 146 [1965], quoting In re Fraser Estate, 288 Mich 392, 394; 285 NW 1 [1939]). Because “ ‘[t]he judicial power... is the right to determine actual controversies arising between adverse litigants,’ ” Anway v Grand Rapids R Co, 211 Mich 592, 616; 179 NW 350 (1920) (citation omitted), a court hearing a case in which mootness has become apparent would lack the power to hear the suit. This is not such a case.